**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
UNITED STATES OF AMERICA,            :
                                     :
     -against-                       :     99 Cr. 997 (JFK)
                                     :
MARTIN ARMSTRONG,                    :     **OPINION AND ORDER**
                                     :
                    Defendant.       :
------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 28, 2011
```

APPEARANCES:

    For the United States of America:

        Preet Bharara
        United States Attorney, Southern District of New York
        One St. Andrew's Plaza
        New York, NY 10007

        Andrew D. Goldstein, Of Counsel

    Defendant, Pro Se:

        Martin A. Armstrong
        FCI Fort Dix
        P.O. Box 2000
        Fort Dix, NJ 08640

**JOHN F. KEENAN, United States District Judge:**

Before the Court is pro se defendant Martin A. Armstrong's ("Armstrong") Motion for Emergency Bail or Transfer to Halfway House or Home Confinement to Enable Medical Care Being Denied by the Bureau of Prisons [Dkt. No. 182] ("Emergency Motion"). On April 10, 2007, Armstrong pleaded guilty to one count of conspiracy to defraud the United States and is currently serving a sixty-month sentence at the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"). Claiming that he is

-1-

not receiving adequate medical care while in the custody of the Federal Bureau of Prisons, Armstrong seeks emergency bail or release prior to the termination of his sentence so that he can obtain private medical care.  For the reasons set forth below, the Emergency Motion is denied, and Armstrong is directed to comply with the terms of this order when making future submissions to this Court.

## I.  Background

**A.  The United States' Cases Against Armstrong**

On September 13, 1999, the U.S. Securities and Exchange Commission ("SEC") and the U.S. Commodities Futures Trading Commission ("CFTC") brought civil actions against Princeton Global Management Ltd., Princeton Economics International Ltd., and Armstrong in the U.S. District Court for the Southern District of New York.[1]  The SEC and CFTC alleged that Armstrong and the companies he owned violated various provisions of the federal securities laws "by fraudulently offering and selling promissory notes in the millions . . . to Japanese institutional investors, and misrepresenting the net asset value to the investors, thereby concealing large and mounting trading losses."  SEC v. Princeton Economic Int'l, Ltd., 73 F. Supp. 2d

---

[1] These cases are captioned SEC v. Princeton Global Management Ltd., No. 99 Civ. 9667 (S.D.N.Y.) and CFTC v. Princeton Global Management Ltd., No. 99 Civ. 9669 (S.D.N.Y.).  Judge Owen, and later Judge Castel, presided over these cases.

420, 421 (S.D.N.Y. 1999). As part of that litigation, the Court ordered Armstrong to turn corporate assets over to the receiver of the corporate defendants. Armstrong defied the Court's order, and he was held in contempt. See SEC v. Princeton Econ. Int'l, Ltd., 338 F. Supp. 2d 465, 466-67 (S.D.N.Y. 2004). Armstrong unsuccessfully challenged the legality of his contempt confinement numerous times. See Armstrong v. Zickefoose, No. 10 Civ. 4388, 2010 WL 4810654, at *6-7 (D.N.J. Nov. 17, 2010) ("Zickefoose II") (citing Armstrong v. Guccione, 470 F.3d 89 (2d Cir. 2009)). The SEC and CFTC actions were eventually resolved by the Court's approval of a Plan of Final Distribution negotiated by the parties. See SEC v. Princeton Econ. Intl'l, Ltd., Nos. 99 Civ. 9667, 99 Civ. 9669, 2008 WL 7826694, at *3 (S.D.N.Y. Sept. 30, 2008).

The United States Attorney for the Southern District of New York also pursued criminal charges against Armstrong in parallel with the civil actions brought by the SEC and the CFTC. On September 13, 1999, Armstrong was indicted on charges of conspiracy to defraud the United States, securities fraud, and wire fraud.[2] On August 17, 2006, Armstrong pleaded guilty to one count of conspiracy to defraud the United States. On April 10, 2007, Armstrong was sentenced to incarceration for a period of

---

[2] This case is United States v. Martin Armstrong, No. 99 Cr. 997 (S.D.N.Y.).

sixty months.  On April 27, 2007, the civil contempt order was lifted and Armstrong's criminal sentence began. Zickefoose II, 2010 WL 4810654, at *6 n.9.

**B.   Post-Conviction Litigation by Armstrong**

Since his incarceration at FCI Fort Dix, Armstrong has made several legal challenges to the execution of his sentence.  The Court is aware of the following three attempts made by Armstrong.

**1.   D.D.C. Action**

Armstrong's first legal challenge to the conditions of his confinement was filed in the U.S. District Court for the District of Columbia. See Armstrong v. Lappin, 630 F. Supp. 2d 73, 74 (D.D.C. 2009).  Armstrong sued the Director of the Bureau of Prisons for injuries he received when attacked by a fellow prisoner during his confinement for civil contempt at the Metropolitan Correctional Center ("MCC") in New York City.  He also requested a "temporary restraining order" requiring the Bureau of Prisons to grant credit for time served on the civil contempt charge against his criminal sentence.  The district court denied Armstrong's request for a temporary restraining order and transferred the case to the Southern District of New York under the venue provisions of the Federal Tort Claims Act, 28 U.S.C. § 1402(b). Lappin, 630 F. Supp. 3d at 77.

Armstrong sought a writ of mandamus challenging the transfer order, but the U.S. Court of Appeals for the District of Columbia Circuit, in a per curiam opinion, dismissed the application. In re Martin A. Armstrong, No. 09-5395 (D.C. Cir. Mar. 23, 2010).  The court of appeals held that it lacked jurisdiction to review the transfer order and that "to the extent [Armstrong] seeks his immediate release, he must pursue such relief through a petition for writ of habeas corpus in the district where he is incarcerated." Id.  The Court of Appeals also denied Armstrong's request for temporary relief and referred Armstrong's request to proceed in forma pauperis to the District Court for the District of Columbia. In re Martin Armstrong, No. 09-5370 (D.C. Cir. Aug. 6, 2010).  After the District Court granted Armstrong leave to proceed in forma pauperis, Armstrong v. Lappin, 09 Civ. 972 (D.D.C. Aug. 12, 2010), the Court of Appeals affirmed the District Court opinion denying Armstrong's motion for a restraining order. In re Martin Armstrong, No. 09-5370 (D.C. Cir. Jan. 13, 2011).

On December 14, 2009, in light of the then-pending mandamus petition and appeal in the D.C. Circuit, the Southern District of New York placed the transferred action on the suspense docket.

**2.   D.N.J. Petition**

On January 28, 2008, in a parallel course of litigation challenging the conditions of Armstrong's confinement, Armstrong filed a habeas corpus petition pursuant to 28 U.S.C. § 2241 in the U.S. District Court for the District of New Jersey.[3] Armstrong challenged the conditions of his confinement and asserted other claims, seeking damages for civil rights violations and a permanent injunction against further incarceration.  On June 12, 2008, the District Court held that Armstrong "made no effort to exhaust his administrative remedies" and had not shown irreparable harm warranting excusal of the exhaustion requirement, and therefore denied the § 2241 petition. Armstrong v. Grondolsky, 2008 WL 7826045, at *6.

On December 18, 2009, Armstrong filed another habeas petition in the District of New Jersey, claiming that he had pursued the required administrative remedies and therefore was entitled to pursue his habeas petition on the merits.  This action was dismissed without prejudice by the district court for failure to prosecute. Armstrong v. Zickefoose, No. 09 Civ. 6378 (D.N.J. Jan. 14, 2011) ("Zickefoose I").

While Armstrong's renewed habeas petition was pending, Armstrong filed a "Motion to be Urgently Taken to Saint Francis

---

[3] See Armstrong v. Grondolsky, No. 08 Civ. 569, 2008 WL 7826045, at *1-2 (D.N.J. June 12, 2008).

Hospital for Medical Attention" in the District of New Jersey on August 20, 2010.  That motion made various allegations about the quality of medical care that Armstrong was receiving at FCI Fort Dix, and contained legal arguments similar to those in the Emergency Motion.  The Court severed the medical care motion from the habeas petition and, construing the motion as a claim for injunctive relief, ordered the FCI Fort Dix Warden Donna Zickefoose to respond to Armstrong's allegations. See Zickefoose II, 2010 WL 4810654, at *2.  Armstrong later filed six additional motions requesting miscellaneous relief. Id.

Cognizant of jurisdictional issues raised by the pendency of a previously filed action requesting similar relief in another district court, see Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929-30 (3d Cir. 1941) (holding that "the court which first has possession of the subject matter must decide it"), the District of New Jersey noted that neither the District Court for the District of Columbia nor the Southern District of New York were likely to take further action and exercised jurisdiction in the interests of justice. See Zickefoose II, 2010 WL 4810654, at *5-8.  The District Court held that Armstrong had again failed to exhaust potential administrative remedies and noted that "[p]rison officials appear to have responded timely and appropriately to [Armstrong's] various medical complaints." Id. at *10-11, *14.

In denying Armstrong's medical care motion, the District Court described Armstrong's past attempts to challenge his confinement for civil contempt, his conviction for defrauding the United States, and the post-conviction conditions of his confinement. See id. at *15-22.  Out of concern for Armstrong's "history of filing similar or identical lawsuits in multiple jurisdictions, and the consequent effect on the administration of justice," the District Court ordered that "any future submissions" to the District of New Jersey must contain a certification that "the claims asserted therein are not the subject of prior or pending litigation in [that] or any other state or federal court," and a list of "the name, docket number, and jurisdiction, of all civil actions previously filed by [Armstrong], in any state or federal court, regardless of the claims asserted in such matters." Id. at *22-23.  The District Court also advised Armstrong of the pro se certification requirements of Rule 11 of the Federal Rules of Civil Procedure and the "three strikes" policy, see 28 U.S.C. § 1915(g), governing in forma pauperis litigation in the federal courts. Id. at *23, *25.

    3.    **S.D.N.Y. Motion**

Armstrong was prosecuted and sentenced for securities fraud before this Court, and his criminal case was closed on April 10, 2007.  In yet another attempt to challenge the conditions of his

detention, Armstrong filed the Emergency Motion in this Court on December 7, 2010 in the closed criminal docket. Armstrong claims that he was denied adequate treatment from the medical staff at FCI Fort Dix for an infection that spread to his eye, his muscles, and his nerves. (Armstrong Decl. at 1-2.) After "persistent complaints," Dr. Patel, an opthamologist, examined Armstrong. Dr. Patel prescribed medicine and recommended eye surgery for a possible cataract. (Id. at 2.) Despite being given the medicine prescribed by Dr. Patel, Armstrong claims to experience continuing medical problems. (Id. at 2-3 ("My legs are in constant pain and the muscles feel like they are contracting and burning. It has entered the muscles in my neck and arms and in my back. If this effects the heart, I believe I will surely die.").)

In the Emergency Motion, Armstrong requests "emergency bail pending appeal, transfer to halfway house . . ., or a change of custody due to medical conditions." (Emergency Motion at 1.) The factual circumstances underlying the Emergency Motion and the relief requested therein closely reflect those in the petitions originally filed in the District Court for the District of Columbia and the District of New Jersey. The Government responded to Armstrong's motion, contesting the jurisdiction of the Court to hear claims arising within the territorial extent of the District of New Jersey.

## II. Discussion

**A.   The Emergency Motion**

In its memorandum of law in opposition to the Emergency Motion, the Government argues that Armstrong's claims should be construed as a petition for a writ of habeas corpus under 28 U.S.C. § 2241.  In support of this argument, the Government notes that Armstrong challenges "the execution, as opposed to the imposition" of his sentence. (Gov't Mem. at 1.)  Under long-standing Second Circuit precedent, a "challenge to the execution of a sentence . . . is properly filed pursuant to [28 U.S.C. § 2241]." Chambers v. United States, 106 F.3d 472, 474 (2d Cir. 1997); see also Thompson v. Choinsky, 525 F.3d 205, 209 (2d Cir. 2008) (the Second Circuit "has long interpreted § 2241 as applying to challenges to the execution of a federal sentence"). In this case, Armstrong's Emergency Motion is focused on the conduct of Bureau of Prison officials and does not challenge the legality of his conviction or the length and duration of his sentence as imposed by the Court.  Therefore, the Court construes Armstrong's Emergency Motion as a habeas corpus petition brought pursuant to 28 U.S.C. § 2241.

The Government challenges the Emergency Motion on two procedural grounds:  (1) the court lacks jurisdiction over Armstrong's claim because FCI Fort Dix is located in New Jersey; and (2) the motion need not be considered because a similar

-10-

motion has already been rejected by the District Court for the District of New Jersey.

Although the Government argues that the Court lacks jurisdiction to entertain Armstrong's habeas petition, the question is more simply addressed on the present record as an issue of the appropriate venue to hear Armstrong's petition.

A petitioner challenging the imposition rather than the execution of a sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). There is no similar provision specifying venue for a § 2241 claim in the court which imposed sentence. In the absence of such a special venue provision, the normal rules for bringing a civil action against a United States officer apply:

> A civil action in which a defendant is an officer or employee of the United States . . . acting in his official capacity or under color of legal authority . . . may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e). Here, both Warden Zickefoose--in her official capacity--and the movant reside in the District of New Jersey. Additionally, none of the events giving rise to Armstrong's claim for the unlawful execution of a sentence have taken place in the Southern District of New York; FCI Fort Dix

-11-

has provided medical care to Armstrong within the District of New Jersey only.  Therefore, the Southern District of New York is an improper venue for the determination of the Emergency Motion.

As venue is not proper in the Southern District of New York, the Court is faced with two options:  dismissal of Armstrong's request or transfer to the District of New Jersey.  See Minette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993).  The Court is not persuaded that transfer to the District of New Jersey would serve any useful function because the District of New Jersey has already ruled on the substantive claims presented in the Emergency Motion.  In light of the prior ruling on a substantially similar motion, the Court declines to transfer Armstrong's motion.  For all the above reasons, Armstrong's Emergency Motion is denied.

## B.   Armstrong's Repeated Litigation

In denying a similar claim made by Armstrong, the District Court for the District of New Jersey found it necessary to prevent Armstrong's practice of making "virtually simultaneous filings in two federal courts, naming different officials of the same federal agency." Zickefoose II, 2010 WL 4810654, at *3.  To that end the court ordered, pursuant to the All Writs Act, 28 U.S.C. § 1651, that any further submissions by Armstrong to that court be accompanied by a certification under penalty of perjury

that "the claims therein are not the subject of pending or prior litigation" in the District of New Jersey or any other court, and a list of all civil actions previously filed by Armstrong. See Zickefoose II, 2010 WL 4810654, at *9.  In doing so, the court was forced to balance the principle that "access to the courts is a fundamental tenet of our judicial system" against the "'interests of repose, finality of judgments, protection of defendants from unwarranted harassment, and concern for maintaining order in the court's docket.'" Id. at *8 (quoting In re Oliver, 682 F.2d 443, 446 (3d Cir. 1982)).

The Court agrees with the District Court for the District of New Jersey that the requirements imposed by its order dated November 17, 2010, are in the interests of justice, and hereby adopts a similar order below, applying the restrictions of that order to submissions to the District Court for the Southern District of New York as well.  Such an order comports with Second Circuit precedent. See, e.g., Ward v. Penn. N.Y. Cent. Transp. Co., 456 F.2d 1046, 1048 (2d Cir. 1972) (order restraining plaintiff "from instituting any further action . . . against the defendants or any of them in any court in the United States based on any matter" already litigated in a complaint was justified under 28 U.S.C. § 1651(a)").

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Emergency Bail or Transfer to Halfway House or Home Confinement is DENIED.

Furthermore, in the interests of justice, the Court ORDERS, pursuant to the All Writs Act, 28 U.S.C. § 1651, that when making any future submissions to the United States District Court for the Southern District of New York, including submissions in pending cases as well as complaints or petitions opening new actions, Armstrong shall:

(1) certify, under penalty of perjury, that the claims asserted therein are not the subject of prior or pending litigation in this or any other state or federal court; and
(2) provide the name, docket number, and jurisdiction, of <u>all</u> civil actions previously filed by or on behalf of Armstrong, in any state or federal court, regardless of the claims asserted in such matters.

Any failure honestly and completely to abide by the Court's certification requirement may subject Armstrong to appropriate sanctions.

**SO ORDERED.**

Dated:   New York, New York
         January 28, 2011

_____
JOHN F. KEENAN
United States District Judge